THAYER, Respondent, vs. GOSS, imp., Appellant.

*September 10 — September 26, 1895.*

*Partnership: Dissolution: Notice: Liability of retiring partner on note of new firm.*

A published notice that "the copartnership formerly existing be-
tween the undersigned, J. D. P. and A. J. G., under the firm name
of J. D. P. & Co., is this day dissolved by mutual consent, and the
business will in the future be carried on under the firm name of
J. B. G. & Co., who will settle all claims of the late partner-
ship," was seen by plaintiff, the payee in a note given by the old
firm for money loaned to it by her. Afterwards she surrendered
such note and took in lieu of it the note in suit, signed by J. B. G.
& Co., believing that J. B. G. & Co. was a firm consisting of J. B. G.
and A. J. G.; but there was in fact no such firm, the business
being conducted in that name by J. B. G. alone. *Held,* that the
notice given was not a sufficient notice of the withdrawal of
A. J. G., but was equivalent to a holding out that he still remained
in the business as a member of the firm of J. B. G. & Co., and
hence that he was liable on the note in suit.

APPEAL from a judgment of the circuit court for Pierce
county: E. B. BUNDY, Circuit Judge. *Affirmed.*

This action was brought against *Alfred J. Goss* and J. B.
Goss, as copartners under the firm name of J. B. Goss & Co.,
upon a promissory note signed by that name, dated April 19,
1893, payable on demand to the plaintiff, with interest, etc.,
charging, in substance, that the defendant J. B. Goss was
the ostensible and active managing member of a firm doing
a milling business at River Falls, Wis., and that the said firm
was composed of the said J. B. Goss and *Alfred J. Goss;*
that the plaintiff believed, when she took the said note, that
the consideration for it was money loaned to the former firm
of J. D. Putnam & Co., consisting of J. D. Putnam and the
defendant *Alfred J. Goss,* which firm was dissolved Novem-
ber 3, 1891, when the firm of J. B. Goss & Co. was formed,
and the property and effects of the former firm were trans-

ferred to it, and it assumed and agreed to pay the debts of said former firm; that the plaintiff, at the request of the said J. B. Goss & Co., surrendered the note of J. D. Putnam & Co. for said loan, and, relying on the promise and credit of the said firm of J. B. Goss & Co., took the note sued on in lieu thereof.

The defendant J. B. Goss made default, and the defendant *Alfred J. Goss* answered, admitting the allegations in respect to the existence and dissolution of the firm of J. D. Putnam & Co., but denying that any firm or partnership of J. B. Goss & Co. was formed, or that he was ever a member of any such firm, or that the property and effects of the firm of J. D. Putnam & Co. were ever transferred to the firm of J. B. Goss & Co., or that it assumed or agreed to pay the debts of the former firm; and he alleged that the business carried on under the name of J. B. Goss & Co. was the private business of the said J. B. Goss, in which he, the defendant *Alfred J. Goss*, had no interest.

At the trial by the court it was found, among other things: (1) That prior to November 5, 1891, the defendant *Alfred J. Goss* and J. D. Putnam were doing a milling business together as copartners under the firm name of J. D. Putnam & Co. (2) That on that day the partnership was dissolved, and the said Putnam and the defendant *Alfred J. Goss* signed and caused to be published, at the place of said business, a notice as follows, to wit:

## "*Notice of Dissolution.*

"Notice is hereby given that the copartnership formerly existing between the undersigned, J. D. Putnam and *Alfred J. Goss*, under the firm name of J. D. Putnam & Co., is this day dissolved by mutual consent, and the business will in the future be carried on under the firm name of J. B. Goss & Co., who will settle all claims of the late partnership.                                J. D. Putnam,

"November 3, 1891.                Alfred J. Goss."

(3) That it was then understood that the partnership property should be conveyed to the defendant J. B. Goss, and that he should carry on the said business, and pay the debts of the firm or J. D. Putnam & Co., doing business under the name of J. B. Goss & Co.; but by mistake the property was conveyed to the defendant *Alfred J. Goss*, who, pursuant to said agreement, afterwards conveyed it to the defendant J. B. Goss, and he carried on the business under the name of J. B. Goss & Co., having no partner. That there was in fact no partnership existing between the defendants, and *Alfred J. Goss* had no interest in the profits of the business of J. B. Goss & Co. as partner. (4) That the note sued on was executed in the manner and for the consideration set forth in the complaint, and the plaintiff, when she took the same, understood and believed that J. B. Goss & Co. was a firm consisting of J. B. Goss and *Alfred J. Goss*, and that there was such a holding out by the said *Alfred J. Goss* as to induce her to so believe and to act upon such belief. As a conclusion of law the court held that the plaintiff was entitled to judgment against both defendants for the amount of the note and costs.

Aside from the proof of the signing and the publishing of the notice as before stated, it appeared in evidence that the plaintiff saw the published notice in the River Falls Journal, and she testified that she believed that the defendant *Alfred J. Goss* still continued in the business, but she had never heard any one say so; that she believed that J. B. Goss and *Alfred J. Goss* continued the business.

From the judgment on such finding the defendant *Alfred J. Goss* appealed.

For the appellant there was a brief by *Spooner, Sanborn, Kerr & Spooner*, and oral argument by *A. L. Sanborn, Chas. P. Spooner*, and *J. B. Kerr*. To the point that the appellant had not in any way so held himself out or allowed others to hold him out as a partner as to warrant any reasonable

person in dealing with the firm of J. B. Goss & Co. on the faith of his being a partner therein, they cited 17 Am. & Eng. Ency. of Law, 882; 1 Lindley, Partn. 47; 1 Bates, Partn. §§ 90, 99; *Newsome v. Coles,* 2 Campb. 617; *Wood v. Duke of Argyll,* 6 Man. & G. 928; *Edmundson v. Thompson,* 2 Fost. & F. 564; *Potter v. Greene,* 9 Gray, 309; *Rittenhouse v. Leigh,* 57 Miss. 697.

For the respondent there was a brief by *F. M. White & J. S. White,* and oral argument by *F. M. White.*

PINNEY, J. The familiar and well-settled rule is that a dissolution of the copartnership by act of the parties, whether a complete discontinuance of the concern or the retirement of a single partner or addition of a member, does not affect the outside world unless proper notice is given; that actual notice must be brought home to former customers or those who are creditors by having dealt with it, but notice by publication is sufficient as to all others. 2 Bates, Partn. § 606; 1 Lindley, Partn, *221. The plaintiff must be regarded as a former customer or dealer with the firm of J. D. Putnam & Co., and, as such, entitled to actual notice, she having loaned them money, though but in a single instance, for which she was then their creditor. She comes within the reason of the rule. 2 Bates, Partn. § 613; *Buffalo C. Bank v. Howard,* 35 N. Y. 500; *Lyon v. Johnson,* 28 Conn. 1; *Wardwell v. Haight,* 2 Barb. 553; *Vernon v. Manhattan Co.* 22 Wend. 191; *National Bank v. Norton,* 1 Hill, 577.

The ground upon which notice of the discontinuance of the concern by act of the parties, or the retirement or addition of a member, is required, is stated as arising from a species of estoppel to deny the continuance of the agency of each of the partners for the firm, or on the ground of negligence whereby credit is given, or from a presumption of a continuance of the former relations, giving to one who once knows of the existence of a firm the right to assume

that it remains the same, so that, until proper notice of dissolution, a partner's attitude is like that of a partner by holding out. 2 Bates, Partn. § 607; *Vernon v. Manhattan Co.* 22 Wend. 192, 193. In *Scarf v. Jardine*, 7 App. Cas. 349, it is stated that the principle upon which those who have dealt with the firm before a change took place are entitled to assume, until they have notice to the contrary, that no change has occurred, "is that of the estoppel of a person who has accredited another as his known agent from denying that agency at a subsequent time, as against the persons to whom he has accredited him, by reason of any secret revocation," — in partnership there being an agency by which one partner is the agent of the firm for the time being to carry on the partnership according to the usual course. 1 Lindley, Partn. (2d Am. ed.), *40; *Thompson v. First Nat. Bank*, 111 U. S. 540, 541.

The plaintiff saw the published notice, and about eighteen months afterward she took the note upon which she sues in lieu of the J. D. Putnam & Co. note, and the question is whether the published notice and the manner in which the new note was executed can be fairly held to constitute notice to the plaintiff that the defendant *Alfred J. Goss* had ceased to be a partner in the concern. If the change in the name was such as to indicate that he was no longer a member, there would certainly be no ground for holding him liable. In the firm name of J. D. Putnam & Co., *Alfred J. Goss* was mentioned under the ambiguous and uncertain designation "& Co." The notice affirms that the partnership of J. D. Putnam & Co. is dissolved, and that the "*business* will in the future be carried on *under* the firm name of J. B. Goss & Co.," who are to settle all claims of the late copartnership. It is fairly evident that a new member, J. B. Goss, has been introduced into the business, and it may fairly be inferred that Putnam had retired. Now, what business was it that in future would be carried on *under* the

new firm name? Plainly, the business of the former firm. Here is no intimation that *Alfred J. Goss* has retired. On the contrary, the fair implication is that he remains under the designation " & Co.," as was the case in the name and style of J. D. Putnam & Co. Beyond the fact of the dissolution of the former copartnership, that *the* business would in future be carried on *under* the firm name of J. B. Goss & Co., and that they would settle all claims of the late copartnership, the notice wholly fails to convey any direct information; but, as observed, we think it may be fairly inferred that Putnam had withdrawn and that *Alfred J. Goss* remained in the business; that the change was substantially a reorganization by the withdrawal of a firm member and by taking in a new one. There is no intimation that *Alfred J. Goss* had sold out his interest, or that he had no interest in, or was not a member of, the alleged firm of J. B. Goss & Co.

The proposition is laid down that when the change of name is relied on it "must indicate the retirement of the particular partner sought to be held, for otherwise, though it be a dissolution of the identical partnership, it is also notice of a new one, in which all the former members may be presumed to continue." 2 Bates, Partn. § 623. We regard this rule as eminently practical and just, and it has the sanction of high authority. In *Howe v. Thayer*, 17 Pick. 91, there was, in effect, a dissolution and the organization of another firm with a different name. The retiring partner, Thayer, was held liable to the former dealers, because the change of name did not indicate that he was the partner going out; and SHAW, C. J., said: "When a business is carried on by three or more as partners, and one withdraws, or one is added, or both, and notice thereof given, and the business is carried on as before, those as to whom no notice is given must be presumed to hold the same relation to the concern that they did before; and such change furnishes

Thayer vs. Goss.

no presumption that the others have ceased to be partners. If the plaintiff knew that Colton had withdrawn and ceased to be a partner, it was not in law a notice to the plaintiff of the dissolution of the partnership as to all its members, to the effect contended for and to the purpose for which that proposition was advanced, namely, to exempt the other members from liability. Or if it was, in a certain sense, *evidence and notice of the dissolution of the same identical partnership that existed before, it was at the same time evidence and notice of the formation of a new partnership among all the remaining members of the firm to carry on the same business,* holding the same relation to its customers and the public, with the single exception implied from the fact that the retiring member will be no longer liable for new contracts and that the acceding partner will thenceforward become liable."

But it is insisted that the new note was not given by the firm with which the plaintiff had been connected; that that firm had been dissolved, and that there never was in fact any such firm as J. B. Goss & Co. But this contention is met and answered in the case of *American L. T. Co. v. Wortendyke,* 24 N. Y. 550, in which the rule laid down in *Howe v. Thayer, supra,* is cited and approved. In that case DENIO, J., says that "in every case where a partner has withdrawn, and there is a further dealing with the remaining partners under such circumstances as to leave the retiring partner responsible, the contract is not between the creditor and the *former* firm, but it is with a *new* firm, which the creditor *has been led to believe still embraced the partner who has in fact gone out. The bare fact, therefore, of the dissolution of the old firm and the creation of a new one,* with which the credit sought to be enforced was had, and which did not embrace one of the old partners, is not conclusive against the plaintiff." In the present case the notice was to the effect that "the *business* will in the future be carried on under

the firm name of J. B. Goss & Co.," who will settle all claims of the late partnership, and it is said that no such firm was created; but, whether so or not, the signature to the new note, as well as the notice, gives rise to the just inference, we think, that *Alfred J. Goss* continued in the business under the new name, and, if there was no new firm formed in fact, it is difficult to see how he can claim to be exonerated from liability. In the case of *American L. T. Co. v. Wortendyke, supra,* the firm with which the plaintiff had dealt was "Wortendyke Brothers." Subsequently the firm was dissolved, and one of the brothers retired, and a new firm was formed, another brother becoming, with the others, members of the new firm under the firm name of "Wortendyke Brothers & Company;" and a note was given to the plaintiff, a former dealer, in the latter name, for goods sold after the dissolution. The plaintiff having had no actual notice of the dissolution, it was held that the retiring member was liable on the note, notwithstanding the change in the firm name, and that the plaintiff had a right to assume that the former partners remained in the business; that a change of firm name, in order to exonerate a retiring partner, must show that he had withdrawn from the business, and that a change not indicating this is insufficient to put dealers on inquiry.

It must be held, we think, that the notice in this case was an assurance or holding out to the plaintiff and former dealers that the business would be carried on under the new name of J. B. Goss & Co. *Alfred J. Goss* had been described in the firm name J. D. Putnam & Co. as the company, and the fact that the name of J. B. Goss took the place of that of J. D. Putnam was no notice of the withdrawal of *Alfred J. Goss,* but, upon the principles already stated, was equivalent to a holding out that he still remained in the business and as a member of the firm of J. B. Goss & Co., designated therein in like manner as in the case of the firm of J. D. Putnam & Co., whether any such firm existed or not; so that

he is liable on the note in suit, signed in the name of J. B. Goss & Co., as by holding out and by estoppel. We think that the judgment of the circuit court is correct.

*By the Court.*— The judgment of the circuit court is affirmed.